UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:23-cv-750-MOC-WCM

| JOHN DOE, | ) |
| MARY DOE, | ) |
| | ) |
| Plaintiffs, | ) |
| vs. | ) |
| | ) **ORDER** |
| BLUE CROSS AND BLUE SHIELD OF | ) |
| NORTH CAROLINA, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant Blue Cross and Blue Shield of North Carolina's ("BCBSNC" or "Defendant") Motion to Strike Complaint or Alternatively Dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 15).

**I.     BACKGROUND**

Plaintiff "John Doe" was a participant in the Johnston Allison & Hord PA Employee Health Plan ("Plan"). (Doc. No. 1 ¶ 3). His daughter, "Mary Doe," was a Plan beneficiary. (Id.). Both "John Doe" and "Mary Doe" are pseudonyms. (Id. ¶ 1 n.1). The Plan was an employee welfare benefits plan governed by the Employee Retirement Income Security Act ("ERISA"). (Id. ¶ 3). At all times relevant to this suit, Defendant insured or provided third-party claims administration services for the Plan. (Id. ¶ 2). While a beneficiary of the Plan, Mary sought treatment from a Utah outdoor wilderness program called Outback Therapeutic Expeditions ("Outback"). (Id. ¶ 26).

Following her discharge from Outback, Mary attended Vista Sage ("Vista"), another

1

treatment center, from April 29, 2021, to January 4, 2022. (Id. ¶ 4). Plaintiffs allege that "[d]uring the timeframe at issue in this case, Vista was located in Salt Lake City Utah." (Id. ¶ 27). Vista closed in 2022 after dozens of former residents sued Vista for abuse and mistreatment.[1]

Defendant covered the initial stages of Mary's stay at Vista. (Id. ¶ 28). On August 19, 2021, however, Defendant informed Plaintiffs that it would deny coverage for Mary's treatment at Vista after August 13, 2021, claiming that such treatment was no longer medically necessary. (Id. ¶ 30; see Denial Letter (Ex. 13)).[2] Defendant's Denial Letter specified that Mary had "made progress," was no longer a risk to herself or others, and that there was no evidence "that a different level of care cannot help you (such as day program, intensive outpatient therapy, and medication management)." (Ex. 1 at 1). Vista purportedly billed over $110,000.00 for Mary's stay, which extended past August 13, 2021. (Doc. No. 1 ¶ 61). In February 2022, Mary's mother appealed the denial of benefits. (Id. ¶ 31).

On March 18, 2022, Defendant affirmed the denial of benefits for lack of medical necessity in a "Notice of First Level Internal Adverse Benefit Determination." (Id. ¶ 47; First Level Appeal Denial (Ex. 2)). The Notice informed Plaintiffs that, unless they pursued the plan's external review claim and appeal procedure, "[a]ny civil action you may choose to bring under ERISA must be filed within one year of the end of the plan's first level internal claim and appeal

---

[1] See Jessica Miller, Utah Teen Treatment Center Closes After 26 Former Residents Sued, Alleging Abuse and Mistreatment, The Salt Lake Tribune (July 26, 2022), https://www.sltrib.com/news/2022/07/26/utah-teen-treatment-center/. Courts "may take judicial notice of the coverage and existence of newspaper articles." U.S. ex rel. Lam v. Tenet Healthcare Corp., 481 F. Supp. 2d 673, 680 (W.D. Tex. 2006).
[2] The Court can consider this Denial Letter because it was incorporated by reference in the Complaint. See Shore v. Charlotte-Mecklenburg Hosp. Auth., 412 F. Supp. 3d 568, 573 (M.D.N.C. 2019); (Doc. No. 1 ¶ 30).

2

procedure." (Ex. 2 at 8). Plaintiffs allege that Mary's mother submitted a second level internal appeal in September 2022. (Doc. No. 1 ¶ 49). In October 2022, Defendant upheld their denial of benefits for lack of medical necessity. (Id. ¶ 58). Plaintiffs did not pursue the Plan's external review claim and appeal procedure. Instead, Plaintiffs filed this action on October 18, 2023, nineteen months after Defendant issued their First Level Appeal Denial. Plaintiffs' counsel identified Plaintiffs only by pseudonym in the Complaint. The lawsuit raises two claims for relief: (1) a claim for recovery of benefits under ERISA (29 U.S.C. § 1132(a)(1)(B)); and (2) a claim for equitable relief for violation of the Mental Health Parity and Addiction Equity Act of 2008 ("Parity Act") (29 U.S.C. § 1132(a)(3)).

Defendant now moves to strike, or alternatively to dismiss, Plaintiffs' complaint. Plaintiffs responded in opposition and Defendant filed a reply. This matter is now ripe for disposition. (Doc. Nos. 18, 20).

## II. STANDARD OF REVIEW

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if the complaint fails to "state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In reviewing a 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the Complaint and draws all reasonable inferences in the light most favorable to the non-moving party. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). To survive a Rule 12(b)(6) motion, however, the non-movant's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 570. Put another way, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. Thus, Plaintiffs' complaint survives Defendant's 12(b)(6) motion only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based

3

upon "its judicial experience and common sense." Id. at 679 (citations omitted).

   III.   DISCUSSION

Defendant offers three reasons why the Court should strike or dismiss Plaintiffs' complaint. First, Defendant contends Plaintiffs' Complaint violates FED. R. CIV. P. 10(a), which requires the "title of the complaint" to "name all the parties." Next, Defendant argues Plaintiffs' claim for equitable relief under Section 1132(a)(3) should be stricken or dismissed as improperly duplicating Plaintiffs' claim for benefits. Finally, Defendant claims this action should be dismissed as untimely filed.

The Court addresses Defendant's last argument first. Participants and health plans "may agree by contract to a particular limitations period" for ERISA lawsuits "as long as the period is reasonable." Heimeshoff v. Hartford Life & Acc. Ins. Co., 571 U.S. 99, 105–06 (2013). Plaintiffs do not dispute that Defendant's Notice of First Level Internal Adverse Benefit Determination ("First Level Denial") required Plaintiffs to bring this ERISA suit either (1) "within one year of the end of the plan's first level internal claim and appeal procedure"; or (2) "if you elect to pursue the plan's external review claim and appeal procedure, … within one year of the date your claim for benefits is denied at the end of the external review process." (See Doc. No. 16-2 at 9).

Plaintiffs contend that their Complaint satisfies the second limitations period articulated by Defendant's First Level Denial. (Id. at 13–15). Plaintiffs are mistaken. The second contractual limitations period is available only to parties who "elect to pursue the plan's external review claim and appeal procedure." (Doc. No. 16-2 at 9). This Plaintiffs did not do. While Plaintiffs did pursue a second level appeal, they failed to pursue the Plan's external review claim procedure,

4

which required Plaintiffs to file a request for external review with the North Carolina Department of Insurance ("NCDOI"). (Id. at 11).

Plaintiffs allege that Mary Doe "submitted a second appeal of the denial of payment," but fail to claim or adduce any proof that she ever submitted a request for <u>external</u> review with the NCDOI. (Doc. No. 1 ¶ 49). Plaintiffs styled their "second appeal" as a "Second Level Appeal Requested Following First Level Internal Adverse Benefit Determination for Medical Claims of" Mary Doe, (Doc. No. 18-2 at 2), and sent this appeal to Defendant's "Level Two Appeals Department" instead of the NCDOI. (Id.). Defendant's response to Plaintiffs' second appeal—Defendant's "Notice of Final Internal Adverse Benefit Determination" ("Second Level Denial")—again informed Plaintiffs of their right to "file a request for external review." (Doc. No. 18-1 at 7). Defendant's Second Level Denial further instructed Plaintiffs that any such request must be filed with the NCDOI. (Id. at 10). Nonetheless, Plaintiffs never filed a request for external review with the NCDOI.

Plaintiffs argue that their second level appeal did, in fact, satisfy the external appeal requirement because it was reviewed by an external medical panel. (Doc. No. 18 at 13). Not so. The Summary Plan Description ("SPD") specified that any second level appeal would be "conducted by a review panel" including "external physicians and/or benefit experts." (Doc. No. 18-3 at 80). Defendant's Level One Denial further stated that Plaintiffs' second level appeal would be reviewed "by an independent external community/provider review panel whose members are not employees of" Defendant. (Doc. No. 16-2 at 9). That Defendant—as promised—relied on external reviewers in denying Plaintiffs' second level appeal does not convert that appeal into a request for external review.

Plaintiffs next argue that the Plan only offered second level appeals "for Plans that are

5

not subject to ERISA." (Doc. No. 18 at 14). That is incorrect. The SPD plainly states that, regardless of whether the plan is governed by ERISA, participants "have the right to a second level appeal." (Doc. No. 18-3 at 80). What's more, Defendant's First Level Denial informed Plaintiffs they were eligible to "file a second level appeal." (Doc. No. 16-2 at 9). Although Plaintiffs cite language from the SPD requiring that participants "timely file a first level appeal of any adverse benefit determination before bringing suit under ERISA," (Doc. No. 18 at 13–14 (citing Doc. No. 18-3 at 92)), that language merely indicates that Plaintiffs could have timely filed their ERISA action after Defendant issued their First Level Denial. That language does not suggest—as Plaintiffs contend it does—that Plaintiffs could file an external appeal without first pursuing a second level appeal.

Plaintiffs also argue that their pursuit of a voluntary second level appeal tolled the one-year period of limitations until Defendant issued its Second Level Denial on October 18, 2022. (Doc. No. 18 at 14 n.42). Not so. The regulation Plaintiffs cite for their tolling argument dictates that tolling applies only "during the time that any such voluntary appeal is pending." 29 C.F.R. § 2560.503-1(c)(3)(ii). Here, then, the limitations period was tolled for the 47 days between Plaintiffs' submission of their second level appeal on September 1, 2022, and Defendant's denial of that appeal on October 18, 2022. See Smith v. Prudential Ins. Co. of Am., 88 F.4th 40, 46 n.6 (1st Cir. 2023) (noting, based on analogous plan language, that tolling only applied from the second level appeal's filing until its denial). Plaintiffs did not initiate this lawsuit until October 18, 2023, 214 days after the one-year period of limitations ran from the March 18, 2022 First Level Denial. (Doc. No. 1 ¶ 47). Thus, even considering the 47-day tolling period, Plaintiffs' lawsuit remans untimely. The Court will therefore dismiss Plaintiffs' suit as time-barred.

Because the Court will dismiss this action as time-barred, the Court need not address

6

Case 3:23-cv-00750-MOC-SCR    Document 21    Filed 07/09/24    Page 6 of 7

Defendant's alternative grounds for striking or dismissing the Complaint.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**.

## **ORDER**

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, Doc. No. 15, is **GRANTED** as time-barred, and this action is **DISMISSED** with prejudice.

Signed: July 8, 2024

Max O. Cogburn Jr
United States District Judge